THE STATE, LUTHER T. HAND AND OTHERS, PROSECUTORS, v. THE CITY COUNCIL OF THE CITY OF ELIZABETH.

1. On petition to a municipal authority, asking that a street may be paved, the city council may regulate the surface of the street, by filling and excavating preparatory to paving it, and include, as a necessary incident, the costs of such grading in the assessment for the costs of the paving.

2. Assessments for the paving of intersections, under the charter of the city of Elizabeth, must be confined to the line of the street on which the improvement is applied for.

3. It is not necessary, in order to give the city council of Elizabeth jurisdiction, that it should appear by their minutes that they had appointed a day to hear persons objecting to the improvement, or interested therein; it is sufficient if such notice of hearing, drawn in compliance with the provision of the charter by order of the city council, be regularly advertised by the city clerk.

*Certiorari* to set aside assessment for paving a street under authority of the city council of the city of Elizabeth.

For plaintiff in *certiorari, J. Alward.*

For defendant, *R. S. Green.*

The opinion of the court was delivered by

OGDEN, J.   It appears, by the papers sent to this court, in the return of the city clerk to a writ of *certiorari*, directed to the city council of the city of Elizabeth, that upon an application in writing to the council, made by Luther T. Hand and others, in May, 1859, proceedings were had in the council, whereby First street, at Elizabeth Port, from Broadway to Elizabeth avenue, was paved under the superintendence of the street committee and street commissioner.

After the execution of the work, and an assessment of the costs and expenses thereof, made by commissioners, and laid upon the owners of the land and real estate upon the street between the designated points, several of the petitioners and others interested applied for and obtained the *certiorari*,

VOL. I.				z

which removed into this court all the proceedings had by the council in the matter of paving said street and making the assessment.

Fifteen special reasons were assigned why the assessments should be set aside, but the arguments were confined principally to three objections.

The petitioners asked that the street might be *paved*, and it appears that the estimate made of the costs of the work included the expenses of *grading* the street preparatory to paving. It is clear that the paving could not have been properly done without so regulating the surface of the street, by filling and excavating, as to form a proper bed for putting down the stones. The expenditure made in the grading was a necessary incident to the paving, and it was properly assessed as a part of the costs of the work petitioned for. That objection to the proceeding cannot prevail.

Another untenable objection was, that all the costs were assessed upon the property holders on First street, whereas it was contended that a proportion of the expenses for paving the intersections should either have been placed upon owners of lots on the intersecting streets, or have been assumed by the city.

The application for paving First street could not have been complied with by leaving the half of each cross-street without pavement, and as the property holders on those streets did *not apply* for the improvement, the council had no power to make them contribute to the expense of doing it.

The first reason assigned, and the one on which the argument was chiefly made, is that it does not appear by the return that, before ordering the work to be done, the council had complied with the requirements of the charter of the city. The power to make improvements by grading, paving, and otherwise, is conferred upon the council by the second section of a supplement to the charter, approved March 15th, 1859. The section directs that the improvement asked for shall be made at the expense of the owners of lands and real estate on the street, or section of the street where made. It

contains a proviso, that before the council shall determine that the improvement shall be made, or work be done, they shall give notice in a newspaper by advertisement for at least two weeks, briefly describing such road, work, or improvement, and requesting all persons who may object thereto, or be interested therein, to appear in person or by agent before the council, or their committee, *at a time and place to be designated therein*, to be heard in reference thereto. Another *proviso* directs that a like notice shall be served upon each owner of land upon or before which the improvement is to be made, if resident within the city, at least ten days before the time appointed; and if non-residents, by placing the notice in the post-office, directed to their address, if known.

The application was made to the council in May, 1859; the *certiorari* is tested November 30th, 1860; and in the interval the city clerk had died, and the street commissioner who gave the notices had removed from the state. A rule was granted by the court, upon an application in behalf of the council, that they might examine witnesses upon several points, one of which was whether the required advertisements were published and the notices given. One of the proprietors of the newspaper published at Elizabeth testified that a paper shown to him is the copy of an advertisement which appeared in that paper on the 24th and 31st May, 1859. The paper thus identified is a public notice, drawn in compliance with the proviso of the section already referred to, dated May 17th, 1859, and signed: By order of the city council. A. M. Elmer, clerk.

It was insisted that it should appear from the minutes of the council, that they had appointed the day for hearing, and that such proof was necessary to give them jurisdiction. The case of *Durant* v. *Jersey City*, 1 *Dutcher* 309, was cited in support of the position; but I do not think that the ruling there made by the court is conclusive against the regularity of the proceedings in this case. By the language of the charter of Jersey City, the council were directed to appoint a time and place, and give notice of the nature of the application and of the time and place for hearing. In the charter

of Elizabeth, the proviso requires that they shall give notice in the Elizabeth paper by advertisement, for at least two weeks, briefly describing the improvement, and requesting parties interested to appear at a time and place, to be designated therein, to be heard, &c. The advertisement proved is a literal compliance with the proviso, and was made by their clerk, who is the official executive agent of the council. The advertisement could not legally have been given in any other way. It appears from the affidavit of Lewis Bacon, taken on commission, that he was the street commissioner at the time, and that he gave the notices to the landholders required in the proviso of the section of the act. The fact that the street committee met on the day designated in the notice, and heard parties interested, is sufficient to show that the clerk, in publishing the advertisements, acted in furtherance of an appointment and order of the council. I am satisfied that it sufficiently appears, from the return and the proofs, that the power delegated to the council was pursued with sufficient strictness, and that they were authorized by the law to pass the ordinance which underlies their subsequent proceedings.

The proceedings of the council should in all things be affirmed.

AFFIRMED, 2 *Vroom* 547.

CITED in *State, Copeland, pros.,* v. *Village of Passaic,* 7 *Vroom* 387 ; *State Van Tassel, pros.,* v. *Jersey City,* 8 *Vroom* 132 ; *State, Watrous, pros.,* v. *Elizabeth,* 11 *Vroom* 279.